UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| GERMAN MOLINA POSADA,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>KRISTI NOEM, *et al.*,<br><br>　　　　Respondents. | Case No. 2:26-cv-00050-RFB-BNW<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION** |

Pending before the Court is Petitioner German Molina Posada's Motion for a Preliminary Injunction (ECF No. 2), challenging the lawfulness of his detention at Nevada Southern Detention Center (NSDC) in the custody of Federal Respondents. Petitioner filed the instant Motion concurrently with his Verified Petition for a Writ of Habeas Corpus pursuant 28 U.S.C. § 2241 ("Petition"). See ECF No. 1. On January 13, 2026, the Court ordered Respondents to show cause why a preliminary injunction should not be granted. See ECF No. 4. Respondents filed their Response on January 21, 2026. See ECF Nos. 9-10. For the following reasons, the Court grants the Motion and orders Respondents to immediately release Petitioner from detention.

The Court makes the following findings of fact based on the Verified Petition and immigration documents filed by Petitioner. See ECF Nos. 1, 1-2, 1-3, 1-4, 1-5, 1-6. Respondents do not dispute Petitioner's factual assertions nor provide any independent evidence regarding their basis for detaining Petitioner. See ECF Nos 9-10. Petitioner is a noncitizen originally from Mexico who has resided in the United States since he entered without inspection in 2023. He has since developed familial (including two U.S. citizen children), financial, and community ties to this country. He was arrested by Immigration and Customs Enforcement ("ICE") on October 24, 2025 in Toquerville, Utah, far from any border or port of entry. He was detained without bond pursuant to the government's new policy, effective July 8, 2025, of subjecting all noncitizens who entered

1  the country without inspection to mandatory detention during the pendency of removal
2  proceedings, which can take months or years. The new policy is based on the government's
3  reinterpretation of the statutory text of the Immigration and Nationality Act ("INA"), specifically
4  8 U.S.C. § 1225(b)(2)(A), in contravention of decades of consistent agency practice and current
5  regulations, which previously guaranteed noncitizens similarly situated to Petitioner the
6  opportunity to be released on bond under 8 U.S.C. § 1226(a). See Escobar Salgado v. Mattos, No.
7  2:25-CV-01872-RFB-EJY, 2025 WL 3205356, at *5-6 (D. Nev. Nov. 17, 2025) (describing the
8  government's new detention policy based on its reinterpretation of § 1225(b)(2)(A)).

9        The Department of Homeland Security ("DHS") has commenced removal proceedings
10 against Petitioner, charging him as inadmissible as "an alien present in the United States who has
11 not been admitted or paroled" pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). DHS asserts Petitioner is
12 subject to detention under § 1225(b)(2)(A) and therefore categorically ineligible for release on
13 bond during the pendency of his removal proceedings, regardless of his individual circumstances.
14 While detained, Petitioner requested a custody redetermination hearing (*i.e.* bond hearing) before
15 an immigration judge (IJ) of the Las Vegas Immigration Court, and the IJ found he should be
16 released on bond in the amount of $5,000, rather than remain in detention, because he poses no
17 danger to the community due to his lack of criminal history, and his appearance at future
18 immigration proceedings can be ensured through bond and alternatives to detention at the
19 discretion of DHS. Nevertheless, the IJ denied Petitioner's release on bond based on the Board of
20 Immigration Appeals (BIA) precedential decision in Matter of Yajure Hurtado, 29 I&N Dec. 216
21 (BIA 2025) ("Hurtado"), which formally adopted the government's new interpretation of §
22 1225(b)(2)(A) and binds IJs to categorically reject bond for individuals like Petitioner. Because of
23 Hurtado, Petitioner remains in detention in the custody of Federal Respondents at NSDC, despite
24 the Immigration Court's findings that the government has no individualized justification for
25 continuing to detain him.

26       As an initial matter, the Court has habeas jurisdiction to review Petitioner's challenge to
27 the lawfulness of his detention, because the relevant jurisdiction stripping provisions of the INA,
28 8 U.S.C. § 1252 do not apply. In evaluating jurisdiction under § 1252, the Court is guided "by the

general rule to resolve any ambiguities in a jurisdiction-stripping statute in favor of the narrower interpretation, and by the strong presumption in favor of judicial review." Ibarra-Perez v. United States, 154 F.4th 989, 995–96 (9th Cir. 2025) (quoting Arce v. United States, 899 F.3d 796, 801 (9th Cir. 2018) (*per curiam*) (internal quotation marks omitted) (citations omitted).

Respondents assert the Court lacks jurisdiction over Petitioner's claims under § 1252(g). Section 1252(g) provides in relevant part: "[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Because Petitioner's claims stem from his detention during removal proceedings, which arise from the Attorney General's decision to commence proceedings against him, Respondents argue that his detention is not subject judicial review.

The Supreme Court has interpreted § 1252(g) as "narrow" in scope, applying only to three discrete actions: commencing proceedings, adjudicating cases, or executing removal orders. Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999) ("AADC"). "Instead of 'sweep[ing] in any claim that can technically be said to arise from the three listed actions,' the provision 'refers to just those three specific actions themselves.'" Ibarra-Perez, 154 F.4th at 995 (alteration in original) (quoting Jennings v. Rodriguez, 583 U.S. 281, 294 (2018)). AADC characterized § 1252(g) as a "discretion-protecting provision," directed against "attempts to impose judicial constraints upon prosecutorial discretion." 525 U.S. at 485 n. 9. As such, the government's insistence that "§ 1252(g) covers 'all claims arising from deportation proceedings' or imposes 'a general jurisdictional limit'" has repeatedly been rejected as "implausible." See Dep't of Homeland Sec. v. Regents of the Univ. of California, 591 U.S. 1, 14 (2020) (quoting AADC, 525 U.S. at 482). And as the Ninth Circuit recently affirmed in Ibarra-Perez, courts retain "jurisdiction to decide a 'purely legal question' that 'does not challenge the Attorney General's discretionary authority . . . even if the answer to that legal question . . . forms the backdrop against which the Attorney General later will exercise discretionary authority.'" Ibarra-Perez 154 F.4th at 996 (quoting United States v. Hovsepian, 359 F.3d 1144, 1155 (9th Cir. 2004)). Moreover, in cases where a noncitizen challenges the Attorney General's arguably discretionary decision on a purely

legal basis as a "violation [of] the Constitution" or "INA," courts have jurisdiction to review such decisions as "premised on a lack of legal authority." Id. at 998.

Respondents' argument that detention during the pendency of removal proceedings is unreviewable as an extension of DHS' decision to "commence removal proceedings" has explicitly been rejected by the Supreme Court as "uncritical literalism leading to results that no sensible person could have intended." Jennings, 583 U.S. at 293–94 (citation modified). Because "[t]he government's broad reading of § 1252(g) would lead to a result that is not contemplated in the statute and that has been disavowed by the Supreme Court," the Court concludes Petitioner's claims here are not barred from review by § 1252(g). See Ibarra-Perez, 154 F.4th at 997.

Similarly, Respondents' argument that § 1252(b)(9) strips this Court of jurisdiction over Petitioner's claims regarding the lawfulness of his detention is also foreclosed by Supreme Court precedent. Section 1252(b)(9) provides: "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter [including §§ 1225 and 1226] shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9).

Because Petitioner "[is] not asking for review of an order of removal; [is] not challenging the decision to detain [him] in the first place or to seek removal as opposed to the decision to deny [him] a bond hearing[]; and [is] not even challenging any part of the process by which [his] removability will be determined . . . § 1252(b)(9) does not present a jurisdictional bar." Nielsen v. Preap, 586 U.S. 392, 402 (2019) (quoting Jennings, 585 U.S. at 294-95) (alterations in original). In Jennings, the Supreme Court specifically rejected the government's broad reading of "arising from" under § 1252(b)(9)—which Respondents continue to assert here—as "extreme," because by only allowing challenges to detention authority through an appeal of a final order of removal (*i.e.* after the period of detention under § 1225(b)(2) or §§ 1226(a) and (c) has ended)," that reading would "make claims of prolonged detention effectively unreviewable." Id. at 293 ("By the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place. And of course, it is possible that no such order would ever be entered in a

1  particular case, depriving that detainee of any meaningful chance for judicial review.") Moreover,
2  a reading of § 1252 that would "completely immunize[ ] [DHS'] practices and procedures
3  [regarding detention] from due process challenges" cannot be sustained. Walters, 145 F.3d at 1052.
4  As such, because Petitioner's claims regarding the lawfulness of his detention are "independent of
5  or collateral to the removal process," § 1252(b)(9) does not bar them. Ibarra-Perez, 154 F.4th at
6  996-97.

7  Respondents' argument that the Court should deny relief as a prudential matter and require
8  Petitioner to exhaust his administrative remedies through an appeal to the BIA is also unavailing.
9  The Court fully incorporates by reference its prior finding that administrative exhaustion is
10 excused as futile due to the BIA's decision in Hurtado. Jacobo Ramirez v. Noem, No 2:25-cv-
11 02136-RFB-MDC, 2025 WL 3270137, at *5-6 (D. Nev. Nov. 24, 2025).

12 The Court further finds that Petitioner has satisfied the Winter factors and is therefore
13 entitled to a preliminary injunction ordering his immediate release from detention subject to the
14 bond conditions imposed by the IJ. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)
15 (setting forth factors for preliminary injunction). To obtain a preliminary injunction, a plaintiff
16 must establish four elements: (1) a likelihood of success on the merits, (2) that the plaintiff will
17 likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities
18 tips in its favor, and (4) that the public interest favors an injunction. Wells Fargo & Co. v. ABD
19 Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing
20 Winter, 555 U.S. at 22).

21 The Court finds Petitioner has established a likelihood of success on the merits of his
22 statutory and due process challenge to his continued detention. This Court previously found in
23 Escobar Salgado that the government's new interpretation of § 1225(b)(2)(A) is incorrect given
24 the statutory text and structure, and that its new policy of detaining noncitizens like Petitioner
25 violates § 1226(a) of the INA, its implementing regulations, and the Due Process Clause of the
26 Fifth Amendment. 2025 WL 3205356, at *10-26 (D Nev. Nov. 17, 2025). The Court incorporates
27 by reference and adopts those same findings and legal conclusions here. Id.
28 First, with regards to the INA challenge, the Court finds that Petitioner, as a U.S. resident

with significant ties to the country who was arrested in the interior years after entering, is entitled to be released on bond under § 1226(a) and its implementing regulations. Id., at *10-22.

Second, the Court finds Petitioner has established a likelihood of success on the merits of his due process challenge to his ongoing detention after an IJ found the government has no individualized justification for continuing to detain him. See Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (Civil immigration detention is permissible only to prevent flight or protect against danger to the community). The procedural due process factors under Mathews v. Eldridge, 424 U.S. 319 (1976), weigh heavily in favor of Petitioners because (1) the private interest affected is his fundamental liberty interest in being free from imprisonment; (2) the risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioner despite the immigration court's determination that his detention is not warranted, nor any process for Petitioner to challenge the exercise of that discretion; (3) the government's interest in enforcing immigration laws is served by the individualized determination by an immigration court, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures, *and* the government has no interest in the unjustified deprivation of a person's liberty. Id. at 334-35; See also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention under 8 U.S.C. § 1226(a)). Finally, because Respondents have asserted no individualized justification—let alone a special or compelling justification—to continue to deprive Petitioner of his physical liberty, this Court finds that Petitioner is currently detained in violation of his substantive due process rights. See Escobar Salgado, 2025 WL 3205356, at *25.

The Court also finds Petitioner has clearly established he faces imminent irreparable injury in the absence of preliminary injunctive relief. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). Hence, "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold no further showing of

irreparable injury is necessary." Vasquez Perdomo v. Noem, 148 F.4th 656, 689 (9th Cir. 2025) (citation omitted). Since this Court has already concluded that Petitioner is being detained in violation of his due process rights, it follows "inexorably" that Petitioner has carried his burden as to irreparable harm. See Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017). Likewise, the minimal, if not nonexistent, burden on the government of adhering to established procedures under § 1226(a), as compared to the preventable human suffering, *e.g.*, financial and emotional burdens on Petitioner, his family, and his community, in addition to the fundamental harm of arbitrary executive detention, demonstrates that the balance of the equities and public interest tip sharply in Petitioner's favor. Id. at 995-96 ("the public interest benefits from an injunction that ensures that individuals are not deprived of their liberty and held in immigration detention because of . . . a likely unconstitutional process.").

Injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court." E. Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 680 (9th Cir. 2021) (citation modified). "Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown[.]" Id. (citation omitted). The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "Its mandate is broad with respect to the relief that may be granted." Id. "It provides that '[t]he court shall ... dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243). Here, the Court finds that the specific harm suffered by Petitioner—continued detention pursuant to the government's incorrect statutory interpretation and unlawful policy after he established that his continued detention was not warranted before the Las Vegas Immigration Court—is remedied by ordering his immediate release, subject to the bond and other conditions imposed by the IJ, and a preliminary injunction enjoining Respondents from continuing to prevent Petitioner's release on the basis that he is detained under § 1225(b)(2).

Under Federal Rule of Civil Procedure 65(c), a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed.

R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, 'the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" Id. (citation modified) (quoting Jorgensen, 320 F.3d at 919). Respondents have not argued releasing Petitioner on bond will be costly. Therefore, the Court declines to impose bond beyond the amount that the IJ set under § 1226(a).

Based on the foregoing **IT IS HEREBY ORDERED** that Petitioner's (ECF No. 2) Motion for a Preliminary Injunction is **GRANTED.**

**IT IS FURTHER ORDERED** that Respondents shall **RELEASE** Petitioner from detention subject to the bond and other conditions imposed by the IJ no later than **4:30 p.m.** on **January 26, 2026.**

The Court has received notice of the hardship other petitioners have incurred in their efforts to satisfy bond, therefore, **IT IS FURTHER ORDERED** that Petitioner has until **February 23, 2026**, to satisfy the monetary bond conditions

**IT IS FURTHER ORDERED** that Respondents are **ENJOINED** from denying Petitioner release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that the parties shall file a joint notice of compliance with this Order by 5:00 p.m. on **January 27, 2026**.

**IT IS FURTHER ORDERED** that on or before **February 2, 2026**, the parties shall file a stipulated proposed scheduling order for full briefing on the merits of the Petition.

**DATED:** January 26, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**